UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
GREUNER MEDICAL OF NJ PC and
CENTER FOR SPECIAL SURGERY OF
ESSEX COUNTY, LLC,

                          **MEMORANDUM & ORDER**

        Plaintiff,

                          17-CV-04569 (AMD) (PKC)

   - against -

YAKINI BROWN

        Defendants.
---------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Presently before the Court is Plaintiffs Greuner Medical of NJ PC ("Greuner Medical") and Center for Special Surgery of Essex County, LLC's ("CSS" and, collectively with Greuner Medical, "Plaintiffs"), Motion for an Order of Attachment and Expedited Discovery, and for a Preliminary Injunction and Temporary Restraining Order ("Motion"). For the reasons stated herein, the Motion is denied.

## BACKGROUND

Yakini Brown ("Defendant" or "Brown") received medical treatment from Plaintiffs at their facilities in New Jersey from May 17, 2017 to June 26, 2017. (Declaration of Adam Tonis, D.C. in Support of Plaintiffs' Motion ("Tonis Decl."), Dkt. No. 6-1 at ¶¶ 2, 4, 6, 8.) In connection with this treatment, Defendant signed two patient agreements, one with Greuner Medical on or about May 17, 2017, and the other with CSS on or about May 24, 2017, (collectively the "Contracts"), through which she assigned all insurance benefit payments to Plaintiffs. (*Id.* at ¶¶ 4, 6.) At the time, Defendant was insured by the Empire Plan, which is managed by United Healthcare. (*Id.* at ¶ 10.) After Plaintiffs treated Brown, they submitted medical claims to Untied Healthcare seeking coverage for the treatment they provided. (*Id.* at ¶¶ 8, 9.) United Healthcare

remitted multiple benefit checks totaling $183,529.87 (the "Checks") to Defendant as a result of these claims. (*Id.* at ¶ 10.) Defendant allegedly did not turn over the Checks to Plaintiffs.[1] (*Id.*) After learning on July 10, 2017, that the Checks had been sent to Defendant, Plaintiffs made multiple attempts, via telephone and mail, to reach Defendant. (*Id.* at ¶ 11.) To date, Plaintiffs have not been able to contact Defendant. (*Id.*)

On August 3, 2017, Plaintiffs commenced this action, alleging that Defendant breached the Contracts by failing to turn over the Checks to Plaintiffs; they seek money damages. (Complaint, Dkt. No. 1.) Defendant was served with the Summons and Complaint on August 14, 2017. (Aff. of Service, Dkt. No. 5.) On August 22, 2017, Plaintiffs moved for an order to show cause seeking an order for attachment and expedited discovery, and for a preliminary injunction and temporary restraining order ("Motion"). (Motion, Dkt. No. 6.) The Court held a show cause hearing ("Hearing"), at which only counsel for Plaintiffs appeared, on August 31, 2017. As stated on the record at the Hearing and for the reasons stated herein, Plaintiffs' motion is denied.

## DISCUSSION

First, Plaintiffs' request for a preliminary injunction or a temporary restraining order ("TRO") is denied because district courts do not have the authority under Fed. R. Civ. P. 65 to grant TROs or preliminary injunctions preventing a defendant from dissipating assets prior to judgment being entered in an action for money damages. *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 130 (2d Cir. 2014) (discussing the Supreme Court's holding in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319, 330-33 (1999), which held that "a district court had no authority pursuant to Rule 65 of the Federal Rules of Civil Procedure to issue

---

[1] As Plaintiffs' counsel explained at the show cause hearing held on August 31, 2017, the Checks were made out to both Plaintiffs and Defendant.

a preliminary injunction preventing a defendant from disposing of its assets pending adjudication of a contract claim for money damages." (internal quotation marks and alterations omitted)). Here, Plaintiffs seek to recover money damages from Defendant for an alleged breach of contract, which is barred by *Grupo Mexicano*. Accordingly, Plaintiffs' request for a preliminary injunction and a temporary restraining order is denied.

Next, the Court finds that Plaintiffs have not met the statutory requirements for a pre-judgment attachment of property under Fed. R. Civ. P. 64. Rule 64 provides that a pre-judgment attachment is available "under the law of the state where the court is located . . . to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64. The grounds for attachment under New York law are set out in C.P.L.R. § 6212, which requires that parties seeking to attach assets demonstrate "that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." C.P.L.R. § 6212.

Here, Plaintiffs have requested an attachment pursuant to C.P.L.R. § 6201(3), which provides that attachment may be granted to a plaintiff who has demanded a money judgment, when the defendant acted "with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." C.P.L.R. § 6201(3); *see also Colon v. Cole Bros. Circus, Inc.*, 04-CV-3606, 2007 WL 3014706, at *2 (E.D.N.Y. Oct. 12, 2007) (Under C.P.L.R. § 6201(3), "it is incumbent upon the [plaintiff] to demonstrate that the defendant is acting with intent to defraud." (quoting *Brastex Corp. v. Allen Int'l, Inc.*, 702 F.2d 326, 331 (2d Cir. 1983)). "Intent to defraud must be proved, and the facts relied upon to prove it must be fully set out in the moving affidavits." *Coley v. Vannguard Urban Improvement Ass'n,*

3

*Inc.*, No. 12-CV-5565 (PKC) (RER), 2016 WL 7217641, at *10 (E.D.N.Y. Dec. 13, 2016) (quoting *Eaton Factors Co. v. Double Eagle Corp.*, 232 N.Y.S.2d 901, 903 (N.Y. App. Div. 1962) (per curiam) (quotation marks and alterations omitted)); *see also Colon*, 2007 WL 3014706, at *2 ("Fraud is not lightly inferred, and the moving papers must contain evidentiary facts—as opposed to conclusions—proving the fraud.") (quoting *Brastex Corp.*, 702 F.2d at 331)); *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482, 487 (S.D.N.Y. 2004) (stating that it is insufficient "to submit affidavits containing allegations that merely raise suspicions of fraudulent intent"). A plaintiff must show "that such fraudulent intent really exists in the defendant's mind." *DLJ Mortgage Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 319 (E.D.N.Y. 2009) (citations and internal quotations omitted). The plaintiff "must present more than 'a scintilla of proof as to the requisite elements of the fraud cause of action alleged in the complaint.'" *Trigo Hnos., Inc. v. Premium Wholesale Groceries, Inc.*, 424 F. Supp. 1125, 1132 (S.D.N.Y. 1976) ("*Trigo Hnos. II*") (quoting *MacMillan v. Hafner*, 344 N.Y.S.2d 729, 730 (N.Y. App. Div. 1973)).

Because "direct evidence of fraudulent intent is rare, courts often look for the presence of 'badges of fraud' which commonly accompany fraudulent transfers in determining whether to infer fraudulent intent" from a disposition of assets. *U.S. Fid. & Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F. Supp. 2d 915, 924 (E.D.N.Y. 1999). The "badges of fraud" courts consider include: (1) a close relationship between the parties involved in the transfer or transaction; (2) secrecy in the transfer; (3) a questionable transfer not in the usual course of business; (4) gross inadequacy of consideration; (5) the transferor's knowledge of the creditor's claim and the transferor's inability to pay it; (6) the use of fictitious parties; (7) the retention of control of the

property by the transferor after transfer. *See id.* (citing *HBE Leasing v. Frank*, 48 F.3d 623, 639 (2d Cir.1995)); *DLJ Mortg. Capital*, 594 F. Supp. 2d at 320.

The Court finds that Plaintiffs have not carried their burden of proving that Defendant had the intent to defraud or to frustrate the enforcement of a judgment. Although Plaintiffs sent multiple letters and made several phone calls to Defendant, Plaintiffs' inability to reach Defendant alone is insufficient to carry their burden of showing intent to defraud. (Tonis Decl., Dkt. No. 6-1 at ¶11.) Indeed, at the Hearing, Plaintiffs' counsel acknowledged that he had been advised of alternative explanations for Defendant's failure to respond to Plaintiffs' attempted communications. Plaintiff's counsel was first told by the person who answered the phone believed to belong to Defendant that Defendant was in the hospital. On a later occasion, Plaintiff's counsel was told that Defendant was on vacation. Although an inability to reach Defendant after multiple attempts raises a suspicion of intent to defraud or frustrate the enforcement of a judgment, these facts do not rise to the level of proving such intent for purposes of justifying pre-judgment attachment under C.P.L.R. §§ 6212 and 6201(3). *See JSC Foreign Econ.*, 306 F. Supp. 2d at 487 (stating that it is insufficient "to submit affidavits containing allegations that merely raise suspicions of fraudulent intent"); *DLJ Mort.*, 594 F. Supp. 2d at 319 (plaintiff must show "that such fraudulent intent really exists in the defendant's mind") (citations and internal quotations omitted).

Furthermore, there is currently no evidence that Defendant has attempted to dissipate the funds at issue. Although Plaintiff's counsel advised the Court at the Hearing that one check for approximately $122,000 was purportedly cashed, he had no information on who had cashed the check and whether any of the proceeds from that check had been spent by Defendant. Plaintiff's counsel also had no information indicating that any of the other checks at issue, which account for

approximately $61,000 of the missing insurance reimbursements, had been cashed or that their proceeds had been spent by Defendant. Thus, the proceeds from the checks at issue may not have been converted and/or dissipated, which the Court finds significant in determining whether Defendant intends to defraud Plaintiffs.

In sum, the evidence that Plaintiffs currently proffer is insufficient to establish Defendant's fraudulent intent for purposes of imposing a pre-judgment attachment. *See Dafeng Hengwei Textile Co., Ltd. v. Aceco Indus. & Comm. Corp.* ("*Dafeng Textile*"), 54 F. Supp. 3d 287, 294 (E.D.N.Y. 2014) ("Plaintiff's assertion that the money paid from K–Mart should have gone directly to Plaintiff and that Defendant's failure to pay it directly to Plaintiff, and failure to account for exactly to whom the money was paid, is insufficient to support an inference of fraud."); *Northeast United Corp. v. Lewis*, 137 A.D.3d 1387, 1388 (N.Y. App Div. 2016) (attachment is "a drastic remedy," and is "strictly construed in favor of those against whom it may be employed").[2] Accordingly, the Court finds that Plaintiffs presently have failed to carry their burden pursuant to C.P.L.R. § 6212 and, as such, their motion for an attachment of assets is denied.

---

[2] The Court notes that, even if Plaintiff had spent the proceeds of the checks, dissipation of assets without more does not prove fraudulent intent. *See Dafeng Textile*, 54 F. Supp. 3d at 293-94 (It is "well established in New York" that "the mere removal or other disposition of property by a debtor is not a sufficient ground for an attachment.") (quoting *Bank of Leumi Trust Co. of N.Y. v. Istim, Inc.*, 892 F. Supp. 478, 483 (S.D.N.Y. 1995)); *Ames v. Clifford,* 863 F. Supp. 175, 179 (S.D.N.Y. 1994) ("[T]he mere transfer of assets, without some showing of fraudulent intent, will not justify attachment."); *see also Rosenthal v. Rochester Button Co.,* 539 N.Y.S.2d 11, 12 (N.Y. App. Div. App. 1989) (finding rapid deterioration of corporation's financial condition, combined with corporate sale of assets, was still "completely devoid of any evidence of fraudulent intent on the part of [the defendant].")

## **CONCLUSION**

For the reasons set forth above, the Court denies Plaintiffs' Motion for Attachment and Temporary Restraining Order and Preliminary Injunction.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 1, 2017
      Brooklyn, New York